[No. 4183. Decided August 4, 1903.]

THE TITLE GUARANTEE AND TRUST COMPANY, *Appellant,*
v. MARGARET McDONNELL *et al., Respondents.*

VENDOR AND PURCHASER — CONTRACT OF SALE — CONDITIONAL OR ABSOLUTE — CONSTRUCTION.

A contract for the sale of land should be construed as conditional and not absolute, when its terms provided that the ven-

dor should convey to the purchaser the lands described on payment of the taxes due and to become due, the principal and interest of a certain mortgage then a lien on the premises, and a sum which, together with such payments, would make $20,000, to be paid in installments at fixed times; that the purchaser should pay the taxes then due on or before a certain date, but expressly exempting him from agreeing to make any of the other payments; that, if any one payment is not made when due, all previous payments shall be forfeited at the option of the vendor, but should not "affect the parties as to any of said land already sold and conveyed," under an agreement contained in the contract which provided that the vendor would convey to third parties certain of the lands on· payment by the other party to the contract of a fixed price per acre according to location; the rate for the entire contract in case of a consummation of sale by the purchaser being about $90 per acre, while the agreement for sale in parcels fixed a rate ranging from $125 to $300 per acre.

SAME — NOVATION — TRUST AGREEMENT — EFFECT.

A contract between an owner of land and another provided in effect for a sale of the entire tract at a specified price, payable in installments, with condition of forfeiture, and that, on payment to the vendor or application on a mortgage on the premises, any parcel of a certain portion would be conveyed to any one designated by the purchaser. Thereafter the vendee assigned his contract to a trust company, which for a consideration was to carry out the vendee's plans and contracts. Subsequently judgments were entered against the vendor, preventing the free transfer of the property, and a contract was executed between the trust company and the vendor, which was denominated "a declaration of trust." It recited the other contracts, that the trust company should be made "trustee" of the vendor, and that the lands had been conveyed to it; provided for a forfeiture in case the trust company should not collect moneys growing due under sales made by it to third parties; required a cash payment by the trust company to the vendor and the satisfaction of the judgments from moneys coming due under the original contract; and provided for the payment of certain damages claimed against the original purchaser. Subsequently it was found necessary to arrange for releases by the mortgagee of parcels sold, and a party was procured to purchase the mortgage. All four parties then united in a contract, reciting all the others, designating the trust company as "trustee" for the vendor, and providing for

releases of the parcels sold as contemplated by the first contract on payment of specified sums per parcel. *Held*, that the trust company did not become a mere trustee as to the vendor, and entitled to compensation for its services, but stood in the place ot, and had the same rights and privileges as, the purchaser.

Appeal from Superior Court, Clarke County.— Hon. ABRAHAM L. MILLER, Judge. Reversed.

*E. B. Seabrook, Coovert & Stapleton* and *W. W. Cotton,* for appellant.

*Milton W. Smith* and *N. H. Bloomfield,* for respondents.

The opinion of the court was delivered by

FULLERTON, C. J.—On February 12, 1894, Columbus McDonnell and Margaret McDonnell, who were then husband and wife, were the owners of 391.48 acres of land situate in Clarke county, in this state, all of which was suitable for the culture of prunes. The land was incumbered by a mortgage made by the owners to Balfour, Guthrie & Company, nominally for a larger amount, but upon which there was then owing the sum of $14,945, and some accrued interest. Very little of the land was under cultivation; some 140 acres being in timber and a large portion of the remainder being only partially cleared. It had at that time growing upon it some sixteen acres of prunes, known in the record as the "10-acre 3-year-old orchard," the "4-acre 3-year-old orchard", and the "2-acre old orchard". While the land was in this condition the Stearns Fruit Land Company, a corporation, conceived the idea of purchasing the land, planting it to prunes, dividing it into small lots, and selling the lots at a greatly enhanced price on the installment plan, with small periodical payments, covering a long period of time. To that end it entered into a written agreement with the owners of the

property, under date of February 12, 1894, reciting the ownership of the land by the McDonnells, the fact that it was subject to a mortgage to Balfour, Guthrie & Company, that the mortgagees had agreed to release such portions of the land as might be sold under the agreement then being entered into, and continued as follows:

"Now this agreement witnesseth: That said parties of the first part [McDonnells], in consideration of the covenants and agreements of the party of the second part herein contained, hereby covenant and agree to and with said party of the second part, as follows:

"That upon the payment by said party of the second part, of the taxes now due against said land upon or before the first day of April, 1894, and of all taxes hereafter accruing during the existence of this agreement and of all interest hereafter accruing or earned or falling due by virtue of said mortgage and of the payment in the times and manner hereinafter specified, of the amount of the principal of said mortgage, and in addition thereto of the sum of $20,000.00 payment of same to be made at the rate of an amount equal to $20.00 per acre on the whole of said land upon or before January 1, 1895, but payments made of taxes due now, and back interest to date are to be first deducted from the amount so to fall due, and the further sum of an amount equal to $10.00 per acre on the whole of said land on or before the first day of January for five years thereafter, said payments falling due upon the first day of January in the years 1896, 1897, 1898, 1899 and 1900; and a final payment of the remainder of said sum upon or before the first day of April, 1900, no interest on deferred payments, that the parties of the first part will thereupon make, execute and deliver to said party of the second part, their successors or assigns, a good and sufficient warranty deed or deeds to the whole of said tract of land as a whole or in such parcels or tracts as the said parties of the second part shall desire.

"It is hereby expressly understood and agreed that said party of the second part agrees to make payments of said

taxes now due against said land upon or before the first day of April, 1894, but it does not agree to make any of the other payments herein specified—time is expressly made of the essence of this contract—and failure for thirty days to make any of said payments at the times herein specified, shall, at the option of said parties of the first part, work an absolute forfeiture of this agreement, and of all moneys theretofore paid by said party of the second part thereunder, without process of law, save as to the last payment due hereunder, as to which three months' grace shall be allowed, and thereafter said party of the second part shall have no right under this agreement, but no such forfeiture shall in any wise affect the parties as to any of said land already sold and conveyed.

"It is expressly agreed that said parties of the first part will at any time, and from time to time, hereafter make and execute to such person or persons as said party of the second part shall make sale to, of any parcel or parcels of said land lying south of the Mill Plain Road, a good and sufficient deed of general warranty, conveying title upon receiving payment either to themselves, or applied in payment of said mortgage against the premises, at the following rates therefor, viz.: not less than $200.00 per acre for the 10-acre 3-year old prune orchard; not less than $200.00 per acre for the 4-acre 3-year-old prune orchard; and not less than $300.00 per acre for the 2-acre old orchard, with house and barn and $125 per acre for the balance of the cleared and cultivated land; upon such sale of any of said parcels of land, possession shall be immediately given to the purchaser, save as to any cleared land then in annual crop, between March 1st and October 1st, in any year as to which possession shall be given as soon as crop is harvested or at furtherest on October 1st following.

"It is further hereby expressly agreed that said party of the second part shall have the right to enter upon any part of said land, at any time, and clear the same; or to plant the same to fruit trees, between the first day of October, and the first day of March, in any season; and thereafter said party of the second party shall retain full

possession and control of any such tract so planted, but until said party of the second part shall make sale of said land as above provided for or shall enter upon the same to plant the same, to fruit as above provided, said parties of the first part, shall remain in the full and undisturbed possession thereof, until the completion of this contract.

"This contract does not in any wise relate to or affect the growing crop now on said land, or any of the stock or other personal property thereon;

"In Witness Whereof," etc.

Between the date of the foregoing agreement and June 21st, following, the Stearns Fruit Land Company surveyed and platted the land into small lots, principally of five acres each, and placed the same on the market for sale under a guaranty contract to the effect that the company would plant the lot to prune trees during the first planting season after the date of the contract of sale, keep the same in a good state of cultivation, and have growing thereon of bearing age not less than a certain number of fruit trees per acre at the date of the maturity of the contract, further guarantying that when final payment should be made by the purchaser the lot should be deeded to him free from liens of every nature, and, by August 24, 1894, had contracted to sell some 309 acres of the land at prices aggregating $92,700, $6,660 of which it had received in cash. Feeling the necessity of being prepared to comply with the contracts under which it had promised to convey these lands, the Fruit Land Company reduced its agreement with Balfour, Guthrie & Company to writing, the McDonnells joining therein, under date of June 21, 1894. By this agreement the mortgagees agreed to extend the time of payment of the principal notes secured by their mortgage, and accept part payments thereof from time to time, if made in sums of not less than specified amounts, further agreeing to release from the operation of their mortgage

any single lot into which the Fruit Land Company had platted the land on the payment to them, to be credited on the mortgage, the value of the lot at a fixed price per acre according to a certain schedule attached to this agreement; the minimum price being $125 per acre, and the maximum $300.

On August 28, 1894, the Stearns Fruit Land Company sold and assigned to the appellant its interest in the lands, together with its interests in the several outstanding contracts entered into for the sale thereof, as well as its interests in and to the several agreements heretofore referred to, subject however to the conditions of the following agreement entered into between the parties at the time of the assignment:

"This Agreement made and entered into this twenty-eighth (28th) day of August, 1894, by and between The Title Guarantee and Trust Company, party of the first part, and the Stearns Fruit Land Company, party of the second part, both of the parties hereto being corporations duly incorporated, organized and existing under the laws of the State of Oregon.

"Witnesseth: That Whereas, said party of the second part has this day assigned, transferred and set over unto the said party of the first part a certain contract made between the said party of the second part and Columbus Mc Donnell and wife of the State of Washington, bearing date February 12, 1894, and recorded in Book 21 of the Records of Deeds of Clarke County, Washington, on page 270 thereof, by virtue of which contract said McDonnell and wife agree to convey to the said party of the second part herein certain lands upon terms therein specified, and

"Whereas, the said party of the second part has likewise this day transferred to the party of the first part a certain contract supplemental to the last mentioned contract and made between the party of the second part hereto and Robert Balfour, Robert Brodie Forman and Alexander Guth-

rie, the said Columbus McDonnell and wife consenting thereto, and

"Whereas, the party of the second part has also this day assigned to the party of the first part certain applications for the purchase of lands made by certain parties with the said party of the second part hereto, which applications have been made by the said parties on the understanding that the lands referred to in the said applications should be selected by the said applicants therefor under the Home Guarantee Contract plan of the party of the second part, from lands described in the aforesaid agreements with Mc Donnell and wife and Balfour, Forman and Guthrie, a schedule of which applications showing the names of the persons applying for such contracts, the payments made and to be made thereon, being hereto annexed and marked 'Schedule A' and made a part of this agreement, and a form of the said Home Guarantee Contract being also hereto annexed and marked 'Schedule B' and made a part of this contract.

"Now This Agreement Witnesseth, that the said party of the first part hereto shall and will hold all of the said contracts so transferred to it and the interest acquired by the party of the second part in the lands described in the aforesaid contracts, upon the following trusts:

"Upon the express understanding and agreement, however, that the party of the first part shall by the acceptance of any or all of the said contracts, incur no liability whatsoever for the payment of the sums of money covenanted by the party of the second part to be paid in the agreements with McDonnell and wife and Balfour, Forman and Guthrie, and no liability to the purchasers of any of the said lands by reason of inability to give title to the same unless the said failure shall result from default of the party of the first part; and it is further agreed between the parties that the party of the first part shall incur no liability by the acceptance of the said contracts aforesaid to the purchasers aforesaid by reason of the failure of the party of the second part to fulfill or perform any or all

of the covenants assumed by it in its agreements with the said purchasers. The trusts aforesaid are as follows:

"A.   To receive all moneys paid in pursuance of such applications and the Home Guarantee Contracts thereby applied for, and which may hereafter in pursuance of said applications be issued to said parties by said Stearns Fruit Land Company upon the completion of the first payment called for by said applications.

"B.   To pay out the moneys so collected by it in each year for the following purposes:

"First:   In the payment of all moneys falling due as the same shall fall due under the said agreements with Columbus McDonnell and wife, to the said Robert Balfour, Robert Brodie Forman and Alexander Guthrie, and the payment of all taxes upon the property. described in the aforesaid agreements, the payments made to the said Balfour, Forman and Guthrie to be payments in satisfaction in whole or in part of the mortgage by them held, and as payments upon the particular tracts of land which may be designated by the party of the second part hereto, a schedule of the payments falling due to the said McDonnell and to Balfour, Forman and Guthrie, being hereto attached and marked 'Schedule C.'

"Second:   In payment of all expenses falling due and payable for the planting, care and cultivation of the said lands, for fulfilling the covenants contained on the part of the party of the second part hereto to be performed in such Home Guarantee Contracts, and such other expenses as may from time to time become necessary in connection therewith, the party of the second part to be absolute judge of the propriety and necessity of such expenditure.   A schedule of the estimated expenses is hereto annexed and marked 'Schedule D.'

"It is further agreed that for the payments provided for in this second specification the party of the second part may from time to time draw orders upon said party of the first part, payable out of the funds so as aforesaid to be received by them.   Provided, however, that the first year of the duration of this trust no moneys shall be withdrawn from the party of the first part for any of the purposes

set forth in this second specification unless there shall remain after the withdrawal of the said moneys, enough cash on hand for the payment of all liabilities which have accrued at the time of the withdrawal, and all fixed charges for a period of six months after the date of the said withdrawal.

"Third: Any surplus of moneys so received remaining in the hands of the party of the first part at the expiration of any year shall be carried over into the next year's account to be used in paying the expenses and making the payments aforesaid for that year, and in securing the release from the aforesaid mortgage and from the remaining payments due to said McDonnell and wife of any part of the said land which may have been selected by any of the said intending purchasers, and which such purchasers may become entitled to under such Home Guarantee Contracts, prior to the expiration of the five years' time contemplated by said contracts; otherwise, such funds shall remain in the hands of the said party of the first part until the completion of this trust, but subject to be used for any exigencies which, in the judgment of said trustee, may arise in carrying out this trust according to the true intent and meaning thereof.

"Fourth: To receive the title to such land upon final payment upon any part or parcel of the whole thereof in trust, as to portions completely paid for by the purchasers aforesaid, for the said purchasers, and as to the balance in trust for the party of the second part and for such purchasers under such Home Guarantee Contracts plan according to their respective rights.

"Fifth: Upon the payment in full of all moneys to be paid to said McDonnell and wife and to the said Balfour, Forman and Guthrie, the remaining moneys in the hands of the said trustee shall be paid to the party of the second part or its assigns, either as to the whole or to any part or parts of such funds so remaining.

"It is expressly understood and agreed hereby that the party of the second part hereto may at any time substitute other purchasers in the place and stead of any who may at any time forfeit their rights under such applications

or under such Home Guarantee Contracts, and such substituted purchasers shall be in all respects protected hereby to the same extent as if they had been specifically mentioned in the schedule above referred to .hereto attached; and it is expressly provided that such new purchasers may be substituted upon such terms as the party of the second part may make with them, but in no case at a less price than the amounts remaining due from the purchasers so in default and failing to make their payments.

"And the party of the second part hereby covenants that it will from time to time procure purchasers to take the place of any so falling out by reason of the non-payment òf the sums of money due from them.

"It is further expressly stipulated and agreed that the party of the first part hereto shall, within the first ten days of each month of the duration of this trust, make written report to the party of the second part, its successors or assigns, of all money received and paid out by them in the carrying out of this agreement.

"It is further agreed between the parties that in the event of any of the purchasers aforesaid exercising the option given them by section 8 of the Home Guarantee Contract set forth in Schedule B aforesaid, that then and in such case the payment made by said purchaser at the time of the exercising of the said option shall be made to the party of the first part and be considered as one of the payments referred to in Schedule A to be disbursed by the party of the first part as set forth in this agreement; and it is further stipulated that the mortgage and promissory note executed at such time by the said purchaser shall run to the party of the first part and be held by the party of the first part pursuant to the terms of this agreement and as one of the assets of the trust, and as the same may be·disposed of, either by sale, or by assignment to said McDonnell in payments of amounts then due or to become due upon such contracts.  No such sale or assessment shall be made at a discount without the consent of said party of the second part.

"It is further agreed that the party of the first part for

its services performed and to be performed, pursuant to the. stipulations of this agreement of trust, shall receive from the party of the second part the sum of two hundred dollars per annum, on the first day of January, 1895, and on the first day of January of each succeeding year during the continuance of the said trust, and the further sum of five per cent on all collections made or received by the party of the first part on contracts assigned to it, and the further sum of all attorneys' fees which the party of the first part shall be obliged to pay for advice and services growing out of any matters arising under or by reason of the execution of this agreement. And it is further agreed between the parties that the party of the first part may retain any of the said moneys due it by reason of the stipulations contained in this paragraph out of any moneys in its hands received under or pursuant to this contract.

"In Witness Whereof," etc.

After the execution of this assignment and agreement the appellant assumed full charge of the interests of the Stearns Fruit Land Company, and thereafter continued to represent such interest as if it had succeeded thereto with the full legal title. Later on the McDonnells suffered certain judgments to be entered against them, which became liens against the land and prevented its free transfer as contemplated in the several agreements. Thereafter a deed was made by the McDonnells to the appellant, and the following agreement entered into:

"This Declaration of Trust and Agreement entered into in triplicate on this 21st day of August, 1896, between Columbus McDonnell and The Title Guarantee and Trust Company, a corporation, of Portland, Oregon.

"Witnesseth: Whereas, on the twelfth day of February, 1894, said McDonnell and Margaret McDonnell, his wife, entered into an agreement with the Stearns Fruit Land Company, which said agreement appears of record in Book 21 on page 270 of the Record of Deeds of Clarke County, Washington, and is hereinafter known as said agreement,

and which sets forth the terms of purchase by said Stearns Fruit Land Company of certain lands in Clarke County, Washington, and

"Whereas, the legal title to the lands mentioned in said agreement has since the date thereof remained in said McDonnell's name, and whereas there have been several liens placed of record in said Clarke County, upon said property, which hamper the free and easy handling of the title to said lands as is required by said recorded agreement; and

"Whereas, it is for the benefit of said McDonnells, and more convenient in carrying out the purposes of said recorded agreement that said The Title Guarantee and Trust Company should be made trustee to act in lieu of said McDonnells, and whereas for this purpose said Columbus McDonnell and Margaret McDonnell, his wife, have this day deeded the lands mentioned in said recorded agreement to said The Title Guarantee and Trust Company, as trustee; and

"Whereas, said Stearns Fruit Land Company did for its benefit and convenience assign its said contract with said McDonnells to said The Title Guarantee and Trust Company on August 28th, 1894, which assignment appears of record in Book 24, page 235 of said records, under which assignment said The Title Guarantee and Trust Company acts as trustee for said Stearns Fruit Land Company in the matter of collections from sub-purchasers of parts of said lands

"Now, therefore, in consideration of the premises, it is hereby agreed by the parties hereto that said The Title Guarantee and Trust Company shall act as Trustee for said McDonnells in carrying out the purposes of said recorded agreement, and that it will immediately notify by mail all sub-purchasers of parts of said lands of its sole right to collect the installments of purchase price from them.

"And in further consideration of the premises it is hereby agreed by said McDonnells that during the period of three years from date they nor their assigns shall have the

right to declare said recorded agreement in any way forfeited or proceed to foreclose it.  Provided, however, that if the said Title Guarantee and Trust Company shall not use due diligence in collecting the moneys growing due under the contracts for sale of lands made by the Stearns Fruit Land Company and immediately pay the same over as in said original contract required, or shall in any way neglect to carry out this contract or any of the provisions of the original contract, then, in that event, the said McDonnells may proceed immediately to declare the said agreement void, and foreclose the same if they shall deem it necessary.

"In further consideration of the execution of said trust deed to The Title Guarantee and Trust Company and this agreement, said company at the execution hereof, makes a cash payment of $500 to said McDonnells on account of the purchase price of said lands.  And in the execution of this trust it is hereby agreed that said Trustee shall apply the funds payable to said McDonnells under said recorded agreement, and coming into its hands from said Stearns Fruit Land Company or said sub-purchasers of said land, to satify all record claims against said land and all orders of said McDonnells, or either of them, heretofore accepted by the said Title Guarantee and Trust Company, and after deducting for itself a commission of five per cent upon all collections made in the matter of this trust out of said receipts, which commission shall be chargeable to the account of the Stearns Fruit Land Company, shall apply the balance of said receipts in payment of the amount due said McDonnells under the original agreement.  It is further understood and agreed that the claims of Columbus McDonnell against the Stearns Fruit Land Company for overdue payments up to the date hereof; for care and cultivation of the premises to date, for bonus paid for borrowed money; also all the claim of said McDonnell against said Stearns Fruit Land Company for damages for being removed from the premises before the time specified in said original contract, and for rent, not only up to date but up to the end of the term of this contract, towit: three

years from date, shall be the sum of three thousand dollars; and the above is hereby expressly declared to be a settlement and accounting between the parties hereto of all claims to date, except said claim for damages and rent, which is settled and accounted up to three years from the date hereof.  Said three thousand dollars to be paid from time to time as moneys are collected into the trust fund hereby contemplated, out of the moneys that would otherwise be paid to the Stearns Fruit Land Company; and this three thousand dollars is a payment over and above the amount due according to the original contract.  And it is further distinctly understood and agreed that the payment of this $3,000.00 shall not affect in any way the money due and to grow due under the original contract.  And it is further expressly understood and agreed that this agreement shall in no wise affect the original contract heretofore mentioned, but the same shall be and is in full force and effect, except as to interest up to date.  And in addition to said three thousand dollars, there shall be paid to the said McDonnell the judgment which the said McDonnell has against the said Stearns Fruit Land Company, aggregating about two hundred dollars; also attorneys' fees of said McDonnell in the settlement and adjustment of this matter, aggregating five hundred dollars; the said last mentioned sums are to be paid in the same manner as the three thousand dollars; and

"Whereas, the said Stearns Fruit Land Company has employed said Columbus McDonnell to take charge of said lands and cultivate and care for them and the trees and the improvements thereon for the sum of twelve hundred dollars per year, which sum is to be paid quarter-yearly and is to be decreased proportionately per year as parts of said land are conveyed to the sub-purchasers thereof, said The Title Guarantee and Trust Company hereby guarantees the payment to said McDonnell by said Stearns Fruit Land Company any sums accruing from the date of these presents to him by virtue of said contract of hiring to cultivate and take charge of said land.  It is also understood and agreed that the amount of work to be done

and performed by said McDonnell in the care and cultivation of said lands above specified shall be that amount and measure specified in the Home Guarantee Contract between said Stearns Fruit Land Company and its purchasers.

"It is further in this matter agreed that at any time upon giving The Title Guarantee and Trust Company thirty days' notice the said Columbus McDonnell may cease and discontinue the care and cultivation of said premises, whereupon his salary of twelve hundred dollars per annum above mentioned shall also be discontinued. It is further understood and agreed that the crop now growing on the said land shall be and is the property of the McDonnells and they shall have the right to harvest and take the same off of the said land.

"It is agreed by and between the parties hereto, that the payment by the said Title Guarantee and Trust Company to the said McDonnell of the sum of twenty thousand dollars ($20,000.00) payable as follows: The sum of Thirty dollars per acre August 21st, 1896; Ten dollars per acre January 1st, 1897; Ten dollars per acre January 1st, 1898; Ten dollars per acre January 1st, 1899; Ten dollars per acre January 1st, 1900; and the balance due on or before April 1st, 1900.

"The said sum of three thousand dollars to be payable on or before the....day of......189.... and the same sum of $500.00 as attorneys' fees to be payable on or before the....day of......, 189.., and the other sums of money heretofore set forth, together with interest on all overdue payments at the rate of eight per cent per annum, and the payment of all sums due and to grow due to Balfour, Guthrie and Company as under said original agreement provided, shall be a full and complete payment and settlement of all moneys to be paid to said McDonnell under the said original agreement."

It was found, however, that the appellant could not make deeds to the contract purchasers, because the receipts under the contracts were not sufficient in amount to pay the costs of planting and caring for the orchards and the price

required to be paid to the mortgagees to obtain partial releases from the lien of the mortgage. Moreover, the mortgagees were threatening foreclosure. The parties, therefore, found it necessary to make some arrangement by which releases could be obtained for a less payment per acre than the contract called for, and also to obtain an extension of time for the payment of the principal due upon the mortgage. To that end they procured one Vincent Cook to purchase the mortgage, and entered into the following agreement with him:

"This Agreement, made and entered into this 8th day of January, 1897, between Columbus McDonnell and Margaret McDonnell, his wife, the parties of the first part, by their trustee and agent, The Title Guarantee and Trust Company, a corporation, the Stearns Fruit Land Company, a corporation, party of the second part, The Title Guarantee and Trust Company, a corporation, the party of the third part, and Vincent Cook, party of the fourth part.

"Witnesseth: Whereas, the parties of the first part were on the 20th day of March, 1893, the owners in fee of the following described real property, towit: [Describing the lands in question and certain other lands, a part of which are situated in Walla Walla County, in this state, and the remainder in Multnomah County, Oregon.] And on said day mortgaged by a mortgage hereinafter referred to as 'said mortgage' to Robert Balfour, Robert Brodie Forman, and Alexander Guthrie, which mortgage was recorded at page 82 of Book 19 of Records in the office of the Auditor of Clarke County, State of Washington, and at page 266 of Book 41 of Mortgage Records in the office of the Auditor of Walla Walla County, State of Washington, and by a trust deed to W. J. Burns, which said deed was recorded at page 32 of Book 196 of Records of Deeds in the office of the Recorder of Conveyances of Multnomah County, State of Oregon, all of the hereinabove described lands as security for the payment of two

certain promissory notes, amounting to sixteen thousand dollars ($16,000), copies of which are set out in said mortgage and upon which there is in fact fourteen thousand eight hundred and eight and forty-hundredths dollars now owing as principal, which said notes are hereinafter referred to as 'said mortgage notes.'

"And whereas, the said parties of the first part did on the 12th day of February, 1894, enter into a written contract with the party of the second part, contracting to sell all of said land in Clarke County to the party of the second part and thereafter on the 28th day of August, 1894, the party of the second part did assign all of its right, title and interest in, to and under said last mentioned contract to the party of the third part, and thereafter on the 21st day of August, 1896, the parties of the first part did by quit claim deed convey all their interest in said land in Clarke County to the party of the the third part, and the legal title to said land in Clarke County is now vested in the party of the third part as trustee for the benefit of the parties of the first and second parts, and whereas the party of the second part has made certain contracts for the sale of portions of said lands in Clarke county, and the party of the third part desires to make deeds conveying title free of encumbrance to such portions and other portions of said lands, but is unable to do so on account of the mortgage above mentioned.

"And whereas, the party of the fourth part is willing to buy said mortgage notes, mortgage and trust deed from the present holders thereof, and to make partial releases of said portions and other portions of said land in Clarke county from the lien of said mortgage upon the considerations hereinafter stated, and the parties of the first and second and third parts each and all desire said partial releases so made and said mortgage and trust deed and mortgage notes to be assigned to the party of the fourth part as aforesaid.

"Now, Therefore, in consideration of the premises and of the considerations hereinafter mentioned, the parties of the first part for themselves, their heirs, executors, administrators and assigns, and the party of the sec-

ond part for itself, its successors and assigns do hereby consent to the making of any partial releases of said land in Clarke county from the lien of said mortgage that may be agreed upon by the parties of third and fourth parts and upon any terms or considerations agreed upon by said parties of the third and fourth parts and without prejudice in any way to the rights of the party of the fourth part to hold all parts of the lands mentioned in said mortgage and trust deed remaining after any or all of said partial releases shall have been made as security for the payment of any sums of money that may remain unpaid upon said mortgage notes and without prejudice to his right to foreclose said mortgage and trust deed upon any default made in the payment of the principal or interest or any other sum or sums provided to be paid by the terms of said mortgage or trust deed or said mortgage notes, or upon any breach of any of the conditions of said mortgage or trust deed to be performed by the parties of the first part.

"And the party of the second part in consideration of the premises and the other considerations mentioned herein agrees to make and deliver to the party of the fourth part at the execution of this agreement its promissory note payable to the party of the fourth part forty-two months after date for the sum of fourteen thousand eight hundred and eight and forty-hundredths dollars ($14,808.40), bearing interest at the rate of ten per cent per annum, payable quarterly, said note to be held by the party of the fourth part with said mortgage notes, mortgage and trust deed, and all payments hereafter made on the principal of said mortgage notes to be also credited on said note of the party of the second part as of the first interest paying date after said payment to the said party of the fourth part.   The party of the second part also agrees to repay to the party of the third part all moneys expended by it for recording mortgages or assignments of mortgages or other instruments of any kind authorized or made pursuant to this agreement, and on account of the difference of interest between said mortgage notes and the note of the said party of the second part, and also all other expense caused to the party of

the third part by reason of any of the terms of this agreement. And the party of the third part in consideration of the premises and other considerations herein stated agrees that at the time any partial release for any of said portions of said land in Clarke county from the lien of said mortgage is made by the party of the fourth part that it, the said party of the third part, will pay to the party of the fourth part the sum of eighty dollars per acre in United States gold coin for the portions so released as payment on the principal of said mortgage notes and that it, the party of the third part, will not convey any portion of the said land in Clarke county to any one without first obtaining a partial release therefor from the lien of said mortgage from the party of the fourth part as is herein provided for, and that it will not sell or convey any portion of said land in Clarke county for a less final payment than one hundred and twenty dollars per acre, to be paid in cash or part cash, the balance of purchase price to be secured by promissory note bearing interest at eight per cent. per annum and mortgage securing the same, being a first lien on the premises sold or conveyed; that if it sells any portion of said land in Clarke county for which it receives less than eighty dollars per acre in cash, it will pay to the party of the fourth part all cash received on such sale, to be applied as payment upon the principal of said mortgage notes, and that it, the party of the third part, will assign to the party of the fourth part the note and mortgage it may receive on any such sale to be held by the party of the fourth part in lieu of the land so released and for the sale of which said note and mortgage was taken. And the party of the third part also agrees to pay all fees for recording mortgages or assignments of mortgages or other instruments of any kind which may be made or assigned to the party of the fourth part under or pursuant to the terms of this agreement, and that it will pay all taxes on all lands herein described now due or hereafter to become due upon which the lien of said mortgage or trust deed continues, and will pay all expense of making such partial releases, and the party of the third part further

agrees that it will pay the interest on said promissory note of the party of the second part to the party of the fourth part promptly as the same falls due, all out of any money received by it on account of any contracts made for the sale of any portion of said lands in Clarke county other than the moneys herein agreed to be applied as payments on the principal of said mortgage notes. And the party of the fourth part, in consideration of the premises and the other considerations herein expressed agrees to buy said mortgage notes and mortgages and trust deed securing the same, provided that said securities can be bought for the principal sum now due thereon not exceeding fourteen thousand eight hundred and eight and forty-hundredths dollars ($14,808.40), and that thereafter he will execute and deliver such partial releases of portions of said land in Clarke county as the party of the third part may request of him upon the said party of the third part paying to him therefor the sum of eighty dollars per acre for each acre and fraction thereof in the tract so released. The said tracts to be released by number as shown upon the plat recorded in the office of the county auditor in said Clarke county, Washington, known as the plat of 'Roselawn.' That he will apply said payment of eighty dollars per acre upon the principal of said mortgage notes as of the first day of the next interest-paying term after its receipt from the party of the third part; that he will also execute such partial releases when the party of the third part conveys any such portions of land in Clarke county without receiving the full sum of eighty dollars per acre in cash upon the payment of such sum as may be received by the party of the third part upon such sale to him, the party of the fourth part, to be applied as payment upon the principal of said mortgage notes as of the first day of the next interest-paying term after its receipt from the party of the third part, provided the party of the third part, at the time of such payment be less than eighty dollars per acre, assign to the party of the fourth part the note and mortgage received upon such sale to secure the payment of balance of the purchase price of one hundred and twenty

dollars ($120.00) per acre to be held by him as security in lieu of the portion of said land in Clarke county so released; he agreeing, however, that upon the payment to him by the party of the third part of enough more money to make up the full payment of eighty dollars per acre on any of said tracts so sold for a less cash payment than eighty dollars per acre to reassign without recourse to him said note or notes and mortgage or mortgages securing the same to the party of the third part, or to such person as it may direct, and will credit such partial payment on said mortgage note as above provided where the whole payment of eighty dollars per acre is made as of the first interest-paying date after its receipt from the party of the third part. He further agrees to credit so much of the interest paid upon said promissory note made by the party of the second part upon the interest accruing upon said mortgage notes as will keep the interest on said mortgage notes fully paid up to the time of payment of interest on said promissory note if the same be sufficient therefor, and that he will not foreclose said mortgage and trust deed or either of them before the maturity of said promissory note of the party of the second part, if interest on said mortgage notes and on said promissory notes of the party of the second part, be at all times when due, promptly paid. And the party of the fourth part consents to the use by the party of the third part of any funds in its hands on account of its trust concerning said lands in Clarke county at the beginning of each quarter after it shall have paid the accrued interest due on said promissory note of the party of the second part, for any of the purposes of its said trust as expressed in the contracts now existing between the party of the third part and the party of the first part, and the party of the third part and the party of the second part.

"In Testimony Whereof," etc.

Later on the following supplemental agreement, being the last of the written agreements, was entered into between the same parties:

"The Supplemental Agreement made and entered into

this 10th day of December, 1899, by and between Columbus McDonnell and Margaret McDonnell, his wife, parties of the first part, and Stearns Fruit Land Company, a corporation, party of the second part, The Title Guarantee and Trust Company, a corporation, party of the third part, and Vincent Cook, party of the fourth part.

"Witnesseth: Whereas, heretofore on the 8th day of January, 1897, all of the above named parties entered into an agreement pursuant to which said party of the fourth part purchased from Robert Balfour, Robert Brodie Forman and Alexander Guthrie that certain mortgage and the notes secured thereby, made and executed and delivered by the parties of the first part to said Balfour, Forman and Guthrie on the 20th day of March, 1893, which was recorded at page 82 of Book 19 of Records, in the office of the Auditor of Clarke county, state of Washington, and at page 266 of Book 41 of Mortgage Records in the office of the Auditor of Walla Walla county, in said state; and whereas, said agreement of January 8th, 1897, provided for making partial releases from the lien of said mortgage of portions of the land mortgaged in Clarke county, but did not provide for such releases as to the land in Walla Walla county; and whereas, the parties of the first part have sold all of said land in Walla Walla county and desire to have the same released from the lien of said mortgage; and whereas, on condition of the said parties of the first part making to the party of the fourth part an assignment of the mortgage and notes for nine hundred and fifty dollars received by them on sale of said land in Walla Walla county as security to be held by the party of the fourth part in lieu of said land in Walla Walla county, the parties of the second and third parts are willing to consent to said release of said land without prejudice to any of the conditions of said agreement of January 8, 1897, and the party of the fourth part is now willing to make said release of said land from said first mentioned mortgage.

"Now, Therefore, in consideration of the premises and said release of said land in Walla Walla county by the party of the fourth part, the parties of the first and second

and third parts hereby consent to said release of said Walla Walla county lands without prejudice to any of the terms or conditions of said agreement of January 8, 1897, and hereby ratify and confirm said agreement and all acts done pursuant thereto. And in consideration thereof and of the assignment of the said $950.00 mortgage and notes to him by the parties of the first part, the party of the fourth part hereby agrees to release said land in Walla Walla county from the lien of said mortgage first mentioned and to credit any money received on account of said $950 mortgage and notes at the time and in the manner provided for crediting money on principal of notes of Columbus McDonnell and wife and Stearns Fruit Land Company in said agreement of January 8, 1897; and the party of the second part hereby consents that the party of the third part may and shall out of the first money coming into its hands from the 'Roselawn Trust' available for such purposes reimburse and repay the parties of the first part any sum of money so received and credited by the party of the fourth part on note of party of second part. And on full payment of the first mentioned mortgage, the party of the fourth part agrees to reassign to the parties of the first part said $950 mortgage and notes or so much of the same as may then remain unpaid and unsatisfied.

"In Testimony Whereof," etc.

During the period which intervened between the time of the making of the first contract and the commencement of this action many of the contracts of sale made by The Stearns Fruit Land Company, as well as others made by the appellant as its successor in interest, were forfeited by the purchasers, so that the net result was that appellant actually deeded of the land only 147.975 acres, leaving remaining thereof undisposed of 243.505 acres, something over one hundred acres of which had been planted to prune trees. Of the land deeded, however, all was not paid for in cash. Where such was the fact, a mortgage

on the land was taken to secure the deferred payments. These mortgages, at the time of the commencement of this action, consisted of first mortgages of the face value of $8,481.29, in the hands of Vincent Cook, and second mortgages of the face value of $2,911.25, in the hands of the appellant.

This action was begun in February, 1900. In its amended complaint the appellant set out the several contracts before referred to, and contended that the effect of the same was to make it a trustee of both the Stearns Fruit Land Company and the McDonnells, responsible only for a faithful performance of the trust evidenced by the several writings; that it had performed the same so far as it was able; that in doing so it had expended over and above its receipts the sum of $2,200.29; that it was entitled to the sum of $3,145.26 for its services; and that $809.98 was due it as interest. It prayed an accounting, for judgment for the amount found to be due it, that the amount found to be due be declared a lien on the second mortgages in its hands, and the land remaining unsold, and that the lien be foreclosed, the mortgages sold, and the proceeds applied in satisfaction of the amount due, and that the lands be sold for any deficiency which should remain thereafter. For answer the respondents admitted the execution of the several written agreements mentioned, but denied that the appellant was a mere trustee thereunder, and denied, also, that the appellant had correctly stated the account. They alleged affirmatively that the effect of the several agreements was to make the appellant a purchaser of the land mentioned; that the appellant was by reason thereof, and by reason of other matters alleged in the answer, indebted to the respondents in the sum of $36,870.54, with interest aggregating another large sum.

They also prayed that the amount found due them be declared a lien on the land remaining unsold by the appellant, and that the same be sold and the proceeds of the sale applied in satisfaction of the amount found due. The new matter in the answer was put in issue by a reply. A trial was had on the issues thus made, resulting in a judgment in favor of the respondents for a total sum, found to be due on September 13, 1901, of $29,477.79. The judgment further directed that the appellant satisfy the mortgage held by Vincent Cook, which then amounted to the sum of $6,479.06, also two certain judgments, known as the Slocum and Wintler judgments, held by Robert Hall, and that it cause to be delivered to the respondents the note and mortgage mentioned in the supplemental agreement with Vincent Cook, or, in case they should fail so to do, that judgment be entered for the respective amounts of the several obligations.

From the judgment entered it will be observed that the trial court adopted the respondents' view of the several contracts. It held that the contract between the Stearns Fruit Land Company and the respondents was a contract to convey, optional, perhaps, before the company entered upon the performance of it, but absolute after that time, binding it to make the several payments therein specified as the purchase price of the land, notwithstanding the contract seemingly expressly provided otherwise; construing the provision of the contract to the effect that the owners would make deeds to parcels on the payment of a particular price per acre to be a provision to enable the company to make sales in advance of the final payment. But, however plausible the reasoning may be by which this conclusion is reached, it seems to us that it is not the correct interpretation of the contract, when considered by itself, or in the light of the acts of the parties

under it.   Looking to the wording of the contract, we find that it contains a promise on the part of the McDonnells to convey to the other party to the contract the lands therein described on the payment of the taxes due and to become due, a certain mortgage then a lien on the premises, and a sum which, taken together with the taxes due and back interest on the mortgage, will make $20,000, in installments of certain amounts at fixed times.   Then comes a promise on the part of the other party to pay the taxes then due on or before a certain date, with an express provision that it does not agree to make any of the other payments. This is followed by a forfeiture clause to the effect that, if any one payment is not made when due, all previous payments shall be forfeited at the option of the first parties. Following this is an agreement that the McDonnells will convey any part of the land lying south of a certain road on payment to them or on the mortgage a fixed price per acre according to location.   It is worthy of notice here that these latter prices were greatly in excess of the prices fixed per acre in that part of the contract providing for the sale of the entire tract; the rate for the entire tract being about $90 per acre, while the other fixed the minimum price at $125 per acre, and ranged as high as $300 per acre.   It was also expressly provided that a forfeiture of the contract for non-payment of the amounts as they became due should not in anywise "affect the parties as to any of said land already sold and conveyed."   Taking the contract, alone, therefore, and reading it altogether, it hardly seems that it was the intention of the parties that there should be an absolute sale, or that the Stearns Fruit Land Company, or the appellant as its successor in interest, should be obligated to pay for the land at all events whether it sold the same or not.   If the court may reason from its knowledge of the general stability of land values,

it knows, from the testimony as to the present values of the land remaining unsold and unimproved, that the prices agreed upon were grossly in excess of the actual cash value of the land. True, the payments extended over a long period of time; but even this would not equalize the contract values with the actual values of the land. The purposes of the parties were therefore speculative. The Mc-Donnells were willing, for the chance of obtaining this speculative value for the land, to permit the Stearns Fruit Land Company and its successor to divide it into small tracts, plant it to prunes, and dispose of it to third persons at prices to be fixed by the company or its successor, so long as they received the prices agreed upon in the contract. If all of it should be taken, the price should be something less than $90 per acre; if any part less than all, the price should be $125, $200, or $300 per acre according to its location; but it was not understood that the Stearns Fruit Land Company was to take more than it was able to sell to third parties, unless it decided to do so before a forfeiture should be declared, and should make the necessary payments to complete the amount of the purchase price. The acts of the parties under the agreement and the subsequent agreements all point to the same conclusion. The McDonnells not only acquiesced in all of the various shifts and arrangements made by the appellant with other interested parties, but they seem never to have demanded a payment according to the terms of the contract as they now seek to construe it. Other circumstances could be cited from the evidence which tend to support the belief that they never thought they had made an absolute sale; but, without stopping to point them out, we conclude that the Stearns Fruit Land Company did not obligate itself by the original contract to purchase the land described therein, nor did the

appellant as its successor in interest, assume such an obligation.

We cannot, however, accept the appellant's theory that it is a mere trustee, entitled to compensation from the Mc-Donnells for its services. As between itself and the Mc-Donnells, it was substituted in the place and stead of the Stearns Fruit Land Company, and has such rights and privileges and is subject to the same obligations as that company would have had or would have been subject, had no assignment been made. In other words, so far as the McDonnells are concerned, the Stearns Fruit Land Company and the appellant are one and the same person. It is true there was language used in the contract of August 21, 1896, from which it might be inferred that the parties intended to make the appellant trustee for both of the original parties with a limited liability; but the subsequent acts of the parties, as well as the agreement of January 28, 1897, show the true intent of the parties was to make their relations as we have defined them to be. It remains, then, to inquire what the rights and liabilities of the parties are which grew out of these relations. Taking up the question of the appellant's liabilities first, it is at once apparent that it became liable for the land sold to third persons under the guaranty contracts. These aggregated, as we have said, 147,895 acres, a part of which bore the minimum price of $125 per acre, and a part $200 per acre, the total being, according to the findings of the trial court, $19,546.88. In addition to this, it was obligated to pay the sum fixed in the contract of August 21, 1896, as liquidated damages, together with the judgment and attorney's fee herein named; the whole amounting to the sum of $3,700. It also obligated itself by the contract of August 21, 1896, to pay Columbus McDonnell for his services in tending the orchard. There is a dispute in the evidence

whether or not all sums earned under this last head were paid; but as the trial court seems to have found that they were so paid, we will follow its conclusion. The aggregate of the principal sum of the appellant's liabilities is therefore:

| | |
|---|---|
| Land sold | $19,546.88 |
| Liquidated damages, etc | 3,700.00 |
| Total | $23,246.88 |

As against this it is entitled to credit for the sums paid on account of the purchase price of the land to the mortgage holders and to the McDonnells personally. Also for the amount paid for taxes accrued prior to April 1, 1894, as per the stipulation in the original contract, and the amounts paid as the purchase price of the Slocum and Wintler judgments which gave rise to the trust deed. These several items are as follows:

| | |
|---|---|
| Amount paid mortgagees | $15,194.63 |
| Amount paid McDonnells | 2,606.95 |
| Taxes due prior to 1894 | 483.04 |
| Slocum and Wintler judgments | 515.75 |
| Total | $18,800.37 |

Deducting this sum from the sum which the appellant is obligated to pay leaves a balance owing from the appellant to the McDonnells of $5,446.51. As this sum has been long overdue, it is right that the appellant pay interest upon it for a reasonable time. From the somewhat meager data in the record on this point it is difficult to find a starting point from which to make the calculation, but we think it no more than just to make the interest equal to the difference between the principal sum found to be owing as above stated and the balance due at the time of the trial on the mortgage to Balfour, Guthrie & Company, now in

the hands of Vincent Cook. The satisfaction of that mortgage will therefore balance the account between the parties and entitle the appellant to all moneys and second mortgages in its hands, and all of the first mortgages due from the contract purchasers held by Vincent Cook as collateral to the principal mortgage. The judgment, however, must provide for certain other matters. Vincent Cook holds, in addition to the mortgages on the lands sold, a mortgage belonging to the McDonnells covering the Walla Walla land, which was the subject-matter of the supplemental contract with Vincent Cook, the face value of which is $950. The McDonnells are entitled to a return of this mortgage, or, if it has been collected, to its value in money. The Slocum and Wintler judgments, while actually belonging to the appellant, stand in the name of Robert Hall. An execution was issued for the unpaid balance on these judgments, under which the lands remaining unsold standing in the appellant's name were sold to Hall. The McDonnells are entitled to a satisfaction of these judgments and such an acquittance from Hall as will clear the record title. The McDonnells are also entitled, of course, to a reconveyance from the appellant of all the lands not sold to the contract purchasers. As Columbus McDonnell has died since the trial of the cause in the court below, and Margaret McDonnell has been confirmed as executrix of his estate, the judgment ordered will be entered with reference to this changed condition.

It is ordered, therefore, that the judgment appealed from be reversed, and the cause remanded with instructions to enter a judgment to the following effect:

1. That the appellant be required to pay to Vincent Cook the amount remaining due on the Balfour, Guthrie & Company mortgage, cause the same to be satisfied of record, and turn back to the respondents the note and mort-

gage on the Walla Walla land, or pay the amount thereof to them if the same has been collected by Vincent Cook.

2.   That the appellant cause satisfaction to be entered of record of the Slocum and Wintler judgments, and cause Robert Hall to make such a conveyance of his purported title to the respondents as will clear the record of any interest he may seem to have in the land sold under those judgments.

3.   That the appellant convey to the respondents all of the land conveyed to it in 1896, not heretofore conveyed by it to the contract purchasers.

4.   That on compliance with the foregoing conditions the appellant be awarded all of the mortgages now in its hands or in the hands of Vincent Cook as its own property, save the mortgage on the Walla Walla land above mentioned.

5.   That the appellant be given sixty days after the remittitur from this court reaches the lower court to comply with the foregoing requirements, and, if at the end of that period it fails or refuses to comply therewith, that judgment be entered against it for the value of the land deeded to it and remaining unsold by it at the rates named in the contract between the Stearns Fruit Land Company and the McDonnells, for the amount remaining due on the mortgage in the hands of Vincent Cook, for the amount of the face value of the note and mortgage on the Walla Walla land, and that the same be declared a lien upon all of the unsold lands, and the mortgages remaining in the hands of Vincent Cook pledged to secure the Balfour, Guthrie & Company note and mortgage, first and superior to any claim thereon of the appellant.   The appellant will recover its costs on this appeal.

MOUNT, HADLEY, ANDERS and DUNBAR, JJ., concur.